# Illinois Official Reports

## Appellate Court

*Nelson v. Country Mutual Insurance Co.*, 2014 IL App (1st) 131036

| | |
|---|---|
| Appellate Court Caption | FOREST LEE NELSON, Plaintiff-Appellant, v. COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-1036 |
| Filed | October 9, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a vehicular collision where plaintiff settled with the insurer of the other party and then proceeded with an underinsured motorist claim under the policy issued by the insurer of the company van he was driving and obtained an arbitration award for $850,000, the trial court's vacation of the arbitration award and entry of summary judgment to his employer's insurer setting the matter for a trial *de novo* was affirmed by the appellate court, despite the absence of explicit language in the policy allowing a trial *de novo* as a remedy following the rejection of an arbitration award, since the Illinois Supreme Court has held that such a remedy is inherent and is proper following the rejection of an arbitration award in excess of the limits dictated by the policy and by statute. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CH-10133; the Hon. Stuart Palmer, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal      Michael S. Cetina, of Walsh Knippen Pollock & Cetina, Chtrd., of Wheaton, for appellant.

Keith G. Carlson, of Carlson Law Offices, of Chicago, for appellee.

Panel      PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Howse and Taylor concurred in the judgment and opinion.

## OPINION

¶ 1      Following a bench trial, judgment was entered in favor of defendant-appellee Country Mutual Insurance Company (Country Mutual) and against plaintiff-appellant Forest Lee Nelson (Nelson).[1] Nelson appeals, attacking not this final judgment but, rather, a prior order entered by the trial court vacating an arbitration award, granting summary judgment in favor of Country Mutual and allowing trial in the first place. He contends that the underinsured endorsement provision to the insurance policy at issue did not provide the option for a trial to take place and that the provision, which was the basis for the arbitration award's rejection, was ambiguous. He asks that we reverse the judgment of the trial court, that we reinstate the arbitration award, and that we remand the cause for determination of the proper setoffs to the award. For the following reasons, we affirm.

¶ 2                         BACKGROUND

¶ 3      On August 31, 1999, Nelson, while driving a company van in the employ of Turbo Tubs of Chicago, was in a car accident. The other driver involved was insured by Nationwide Mutual Insurance Company and, pursuant to the $100,000 underinsured motorist liability limit within that policy, Nelson collected $90,000.

¶ 4      Nelson's employer, meanwhile, was insured by Country Mutual with an underinsured motorist liability limit of $1 million. Nelson proceeded with an underinsured motorist claim against Country Mutual, and Country Mutual filed an action for setoffs. Relevant to the instant

---

[1] We note for the record that the party designations in this cause are somewhat confused, perhaps due to the fact that the cause began in the chancery division of the trial court and later was transferred to the law division for final disposition. As Nelson notes, he was originally named as the "defendant," since Country Mutual filed the initial chancery action; however, once the cause was transferred, the caption was changed and Nelson was named as the "plaintiff" and Country Mutual was named as the "defendant." Whatever the propriety of these technical designations, we have labeled them according to the notice of appeal filed in our court and, to minimize any further confusion, we choose to refer to them in our decision by their proper names rather than by any titular designations.

appeal, the arbitration clause of the policy between Nelson's employer and Country Mutual stated:

> "b. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding on the **insured** and **us** for amounts not exceeding the limits for **bodily injury** required by Illinois Law." (Emphases in original.)

After some seven years of discovery, Nelson and Country Mutual agreed to arbitration. In December 2010, following an arbitration hearing, two arbitrators, with one dissenting, returned an award in favor of Nelson in the amount of $850,000, and reserved any issue regarding setoffs and worker's compensation. Nelson filed an application to approve the arbitration award, while Country Mutual filed an amended complaint rejecting the award and asking for a trial *de novo*. In response, Nelson filed a motion to dismiss Country Mutual's amended complaint.

¶ 5 In August 2011, a hearing was held on Nelson's motion to dismiss. Nelson argued that the insurance provision at issue did not allow for a trial *de novo* as Country Mutual requested because it did not explicitly state that this was a remedy upon the rejection of an arbitration award; he further argued that the insurance provision at issue was entirely ambiguous with respect to the limit of award necessary for rejection. The trial court disagreed. First, it relied on *Zappia v. St. Paul Fire & Marine Insurance Co.*, 364 Ill. App. 3d 883 (2006), to find that trial *de novo* was the proper remedy here despite the provision's language. Second, the court noted that while there could be a minor ambiguity regarding the pertinent statutory amount contemplated by the phrase "the limits for bodily injury required by Illinois Law" as used in the provision, because the amount was only either $20,000 or $50,000 and because both of these amounts were clearly less than the $850,000 Nelson was awarded, Country Mutual undeniably had the right to reject the arbitration award. Thus, the trial court denied Nelson's motion to dismiss. Country Mutual, upon the trial court's recommendation, then filed a motion for summary judgment, asking that the arbitration award be vacated and that a trial *de novo* be ordered. The trial court granted Country Mutual's motion for summary judgment and transferred the cause to the law division.

¶ 6 At the conclusion of trial, a verdict was entered in favor of Country Mutual and against Nelson. Nelson filed a motion for a new trial, arguing that the arbitration award should never have been vacated and that the finding in favor of Country Mutual was against the manifest weight of the evidence. The trial court denied Nelson's motion.

¶ 7 ANALYSIS

¶ 8 As noted earlier, Nelson does not challenge the ultimate judgment in this cause which followed the trial. Rather, he challenges only the decision granting summary judgment in favor of Country Mutual, vacating the arbitration award and allowing trial in the first place.

¶ 9 Nelson's first contention on appeal is that the trial court erred in vacating the award and setting the matter for trial because the underinsured endorsement provision of the insurance policy at issue does not explicitly provide for a trial *de novo* remedy upon the rejection of an arbitration award. Citing several cases where insurance provisions included such language, he asserts that there is more than one interpretation of the outcome of a cause following a rejection and that, if Country Mutual wanted trial *de novo* as a remedy, it was required to put such

specific language in the policy. He further claims that, because it chose not to, the policy is ambiguous and Country Mutual forfeited trial *de novo* as a remedy following rejection of the award. We disagree.

¶ 10    The instant situation, where a car accident results in an arbitration award which is rejected by an unsatisfied party who then demands trial pursuant to the insurance policy at issue, is a classic one. Despite some debate, our courts have come to affirm that such trial *de novo* provisions are valid, enforceable and not against public policy. And, this has been found to be true even when the insurance policy at issue did not contain the specific words "trial *de novo*" as a remedy for rejection.

¶ 11    In considering this evolution, we turn first to *Reed v. Farmers Insurance Group*, 188 Ill. 2d 168 (1999). There, the insured was injured in a car accident by an uninsured motorist who fled the scene. As required by statute, the insured's policy with her insurer contained a clause calling for arbitration if they could not agree on the amount of coverage to which she was entitled under the policy's uninsured motorist coverage. See *Reed*, 188 Ill. 2d at 170-71 (citing 215 ILCS 5/143a (West 1996)). The policy further provided, also as required by statute, that the arbitration award would be binding on the parties if it fell below a specified amount, namely, the minimum required limits for bodily injury as set forth in the Illinois Financial Responsibility Law which, at that time, was $20,000 per person. See *Reed*, 188 Ill. 2d at 170 (citing 625 ILCS 5/7-100 *et seq.* (West 1996)). Thus, if the arbitration award was more than that amount, then either party could reject the award. See *Reed*, 188 Ill. 2d at 170. With this policy in place, and before the matter was even submitted to arbitration, the insured filed an action seeking a declaratory judgment that the policy's arbitration provision was unconstitutional, challenging both the clause permitting either party to reject awards greater than $20,000 and the requirement that the matter be submitted to arbitration at all. See *Reed*, 188 Ill. 2d at 171. The insurer moved to dismiss and, while the trial court granted its motion, the appellate court agreed with the insured and reversed. See *Reed*, 188 Ill. 2d at 171.

¶ 12    The cause then proceeded to our state supreme court, which held that the trial *de novo* provision of the uninsured motorist provision in the insurance policy at issue did not, contrary to the insured's insistence, violate public policy. See *Reed*, 188 Ill. 2d at 174. The *Reed* court explained that because such provisions were explicitly required by statute to be included in all uninsured motorist coverage policies, it was only logical that they could not, at the same time, be violative of public policy. See *Reed*, 188 Ill. 2d at 174 ("the legislature has determined that uninsured-motorist coverage must contain this provision, and [our statute] accordingly requires its presence in automobile policies"; thus, the insured's "appeal to public policy as grounds for invalidating the arbitration provision is unavailing here, for the arbitration provision that appears in [her] insurance contract is already an expression of public policy and represents the legislature's consideration of the question").

¶ 13    While *Reed* focused primarily on the aspect of trial *de novo* provisions and their validity pursuant to public policy concerns, it also spoke critically to the situation present in the instant cause. That is, like the instant cause, the policy at issue in *Reed* did not contain any specific language explicitly calling for a trial upon the rejection of an arbitration award. Instead, and again like the instant cause, the policy simply tracked the language of the statute, which, as noted, called for arbitration if the parties could not agree on a coverage amount and prescribed that the arbitration would be binding only if the award reached fell below a specified amount, *i.e.*, the minimum required limits for bodily injury as set forth in the Illinois Financial

- 4 -

Responsibility Law, which, at that time, was $20,000. See *Reed*, 188 Ill. 2d at 170. In reviewing these policy provisions, and the mandates of section 143a of the Illinois Insurance Code, which statutorily required them in all uninsured motorist coverage policies, the *Reed* court explained:

"The arbitrators' determination is binding only with respect to awards below $20,000, however, for the statute permits either party to reject an award that exceeds that amount and to resolve the claim instead through the judicial process." *Reed*, 188 Ill. 2d at 172.

Thus, in this situation where there was no policy provision with explicit language calling for trial *de novo* as a remedy for the rejection of an arbitration award, our state supreme court made clear that such a remedy was, nonetheless, inherent in the dictates of the policy and was the proper method to resolve the rejection of arbitration awards exceeding the limits dictated by the policy and by statute. See *Reed*, 188 Ill. 2d at 172.

¶ 14    Following *Reed* was *Zappia v. St. Paul Fire & Marine Insurance Co.*, 364 Ill. App. 3d 883 (2006), which left this area of law with two significant points. In *Zappia*, identical to the case at bar, the insured was injured in a car accident, settled with the negligent party's insurance carrier, and then claimed benefits under the underinsured motorist provision of a policy he held with his own insurer. The cause proceeded to arbitration, which resulted in an award to the insured of $31,415.27 (after setoffs). See *Zappia*, 364 Ill. App. 3d at 884. The insured, unhappy with this award, filed a complaint for trial *de novo*, citing the following provision of his underinsured motorist policy:

" 'A decision agreed to by two of the arbitrators will be binding for amounts of damages that are up to the minimum financial responsibility limits as prescribed by Illinois law.' " *Zappia*, 364 Ill. App. 3d at 884.

Just as in *Reed*, the statutory limit at that time was $20,000. See *Zappia*, 364 Ill. App. 3d at 884 (citing 625 ILCS 5/7-203 (West 2002)). Thus, the insured argued, he had the right to reject the arbitration award since it was more than the statutory limit and, once he did so, he was entitled to a trial *de novo*. See *Zappia*, 364 Ill. App. 3d at 884.

¶ 15    The *Zappia* court's main focus, as in *Reed*, was whether the trial *de novo* provision violated public policy. See *Zappia*, 364 Ill. App. 3d at 884-85. This was because, since *Reed*, attempts were being made to distinguish between uninsured motorist coverage and underinsured motorist coverage and the validity of trial *de novo* provisions, with some courts finding such provisions to be valid as in line with public policy for uninsured motorist coverage because they were statutorily required (as discussed in *Reed*), but invalid as against public policy for underinsured motorist coverage because there was no similar statute requiring their use in that context. See *Zappia*, 364 Ill. App. 3d at 884-85 (discussing several cases in this respect). From this debate came the first significant point of *Zappia*. After reviewing all the cases at odds with each other, the *Zappia* court found that, just as trial *de novo* provisions included in arbitration clauses governing uninsured motorist coverage do not violate public policy, trial *de novo* provisions included in arbitration clauses governing underinsured motorist coverage similarly do not violate public policy. See *Zappia*, 364 Ill. App. 3d at 887-88. Disagreeing with those cases holding otherwise, the *Zappia* court noted that it did not matter that the former may be statutorily required while the latter was a contractual element of the insurance policy. See *Zappia*, 364 Ill. App. 3d at 887. Instead, the *Zappia* court concluded that trial *de novo* provisions in underinsured motorist coverage were also valid and enforceable, and any

distinction between those and similar trial *de novo* provisions in uninsured motorist coverage would be "anomalous." (Internal quotation marks omitted.) *Zappia*, 364 Ill. App. 3d at 887-88; see also *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 66 (2011) (reaffirming *Zappia* and finally settling any dispute between uninsured and underinsured trial *de novo* provisions, holding that neither violates public policy because uninsured motorist coverage and underinsured motorist coverage have the same legislative consideration behind them, which is to "ensure that an injured policyholder will be compensated for her damages up to the limits of coverage she has paid for, regardless of the coverage carried by the at-fault driver").

¶ 16    The second point of importance gleaned from *Zappia* is, perhaps, even more critical to the case at bar. The facts of that cause make clear that, contrary to Nelson's contention here, explicit language calling for a trial *de novo* as the remedy upon rejection of an arbitration award pursuant to underinsured motorist coverage is not necessary for trial to be the remedy. Again, in *Zappia*, the insured was unhappy with the result of the arbitration, which was above the binding limit as prescribed in the policy. Citing that provision, which, identical to the one in the instant cause, stated only that arbitration would be binding for an amount " 'up to the minimum financial responsibility limits' " of Illinois law (*i.e.*, at that time, $20,000), the insured demanded trial *de novo*. *Zappia*, 364 Ill. App. 3d at 884. The *Zappia* court concluded that, as the arbitration award was over the prescribed limit, this was, undeniably, his right. See *Zappia*, 364 Ill. App. 3d at 888. Significantly, it was of no relevance that the insurance policy did not specifically state that trial *de novo* was the remedy for the rejection of an arbitration award. Instead, it was clearly inherent that, once the arbitration award was properly rejected, the cause would proceed to the only remedy available to settle the dispute, namely, trial.

¶ 17    Accordingly, in both *Reed*, which involved uninsured motorist coverage, and *Zappia*, which involved underinsured motorist coverage, the arbitration clauses of the insurance policies at issue did not contain explicit language ordering a trial *de novo* upon the rejection of an arbitration award. However, in both cases, our courts consistently referred to the arbitration clauses, which allowed for the rejection of any arbitration award in an amount over the minimum financial responsibility limits as prescribed by Illinois law because they are nonbinding, as trial *de novo* provisions. And, most significantly, in both cases, our courts concluded that, despite the absence of any formal language ordering it, trial *de novo* was the proper remedy to be had following the proper rejection of an arbitration award.

¶ 18    Applying *Reed* and, more particularly, *Zappia* to the instant cause, we find that Nelson's argument that specific language ordering trial *de novo* as the remedy following rejection of an arbitration award was required for Country Mutual to proceed to trial here lacks merit. Again, the arbitration clause at issue in this cause is virtually identical to those in *Reed* and *Zappia*. It stated that "a decision agreed to by two of the arbitrators will be binding on the **insured** and **us** for amounts not exceeding the limits for **bodily injury** required by Illinois Law." (Emphases in original.) The arbitrators in the instant cause awarded Nelson $850,000–clearly (as we discuss below) in excess of the limits for bodily injury under Illinois law. Thus, pursuant to the policy, Country Mutual had every right to reject the arbitration award. And, pursuant to *Reed* and *Zappia*, it had every right to then proceed to the only remedy available pursuant to that rejection in order to resolve the matter between the parties: trial *de novo*. As those cases found, it is irrelevant that there is no specific language in the policy ordering a trial *de novo* as a remedy upon rejection. Instead, this remedy is inherent in the arbitration provision allowing for

the proper rejection of an arbitration award that is nonbinding because it exceeds the amount of damages that are up to the minimum limits prescribed by Illinois law.

¶ 19     Nelson makes a second, and final, contention on appeal. Again highlighting the same trial *de novo* provision at issue in his insurance policy with Country Mutual, he briefly claims that the words "not exceeding the limits for **bodily injury** required by Illinois Law" are ambiguous. He claims that, because Country Mutual did not use the words "minimum limits of the Illinois Safety Responsibility Law," it is unclear what the limits are to justify the rejection of an arbitration award under the policy and that the phrase used could either mean the limits of the Illinois Safety and Family Financial Responsibility Law or the limits of the policy. Again, we disagree.

¶ 20     First, it is clear that Nelson's assertion that the phrase used in the policy could mean the limits of the policy is not logical. If "not exceeding the limits for **bodily injury** required by Illinois Law" meant not exceeding the policy limits, then this provision would never apply. This is because, as Country Mutual points out, there could never be an award greater than the policy limits. Therefore, it would render the provision completely meaningless. See *Atwood v. St. Paul Fire & Marine Insurance Co.*, 363 Ill. App. 3d 861, 863 (2006) (policy language is not ambiguous simply because parties disagree on meaning; only reasonable interpretations may be considered and all provisions should be read together and with intended effect).

¶ 21     Moreover, if the phrase used cannot mean the limits of the policy, the only other logical, reasonable and unstrained meaning is that the phrase means the limits of the Illinois Safety and Family Financial Responsibility Law. Interestingly, in *Zappia*, the phrase used there was almost identical to the one in the instant case. It stated that a decision agreed to by the arbitrators would be binding for amounts of damages that are " 'up to the minimum financial responsibility limits as prescribed by Illinois law.' " *Zappia*, 364 Ill. App. 3d at 884. No ambiguity was found there, as the phrase was clearly, and without question, referencing "the $20,000 minimum required limits for bodily injury as set forth in the Illinois Safety and Family Financial Responsibility Law (625 ILCS 5/7-203 (West 2002))." *Zappia*, 364 Ill. App. 3d at 884. We find the same to be true here.

¶ 22     In any event, Nelson was awarded $850,000 by the arbitrators. This was a nonbinding award under the policy, since it clearly exceeded "the limits for bodily injury required by Illinois Law."[2] Country Mutual, therefore, had the right to reject it and, accordingly, to proceed with the only viable remedy here that would resolve the dispute between the parties pursuant to the insurance policy, namely, a trial *de novo*. Accordingly, we find that the trial court's vacation of the arbitration award and its setting of the instant matter for trial *de novo* were wholly proper in light of the circumstances presented in the instant cause.

¶ 23                                            CONCLUSION

¶ 24     For all the foregoing reasons, we affirm the judgment of the trial court.

¶ 25     Affirmed.

---

[2]As the trial court here found, the only possible ambiguity in the use of the phrase at issue is not whether it refers to the limits of the law cited or the limits of the policy but, rather, the minor one of the applicable amount of the limits for bodily injury under the law cited, since that law has been amended various times.